# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Kelley*, 2013 IL App (4th) 110874

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MEKIEL V. KELLEY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0874 |
| Filed | April 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the denial of defendant's *pro se* postconviction petition following an evidentiary hearing, the appellate court found that the trial court did not abuse its discretion in requiring defendant to remain handcuffed during the hearing, especially when it considered the circumstances of the unsecure nature of the courtroom and defendant's history of being disruptive. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 07-CF-2153; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Peter A. Carusona and Mark D. Fisher, both of State Appellate Defender's Office, of Ottawa, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Appleton and Harris concurred in the judgment and opinion.

## OPINION

¶ 1 In August 2010, defendant, Mekiel V. Kelley, filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/art. 122 (West 2010)). In March 2011, appointed counsel filed an amended postconviction petition. After an evidentiary hearing, the Champaign County circuit court denied defendant's request for postconviction relief.

¶ 2 Defendant appeals, asserting the trial court erred by (1) requiring defendant to wear shackles during the evidentiary hearing, (2) finding defendant's argument trial counsel was ineffective for failing to file a motion to suppress was barred by the doctrine of *res judicata*, and (3) finding defendant's claim his trial counsel was ineffective for failing to file a motion to reconsider defendant's sentence was barred by the doctrine of forfeiture. We affirm.

¶ 3                              I. BACKGROUND

¶ 4 In December 2007, the State charged defendant by information with the Class X felony of unlawful possession with the intent to deliver a controlled substance (720 ILCS 570/401(a)(1)(A) (West Supp. 2007)), namely 15 grams or more but less than 100 grams of a substance containing heroin. On April 29, 2008, the State also charged defendant by information with unlawful possession with the intent to deliver a controlled substance (720 ILCS 570/401(c)(1) (West Supp. 2007)), alleging he possessed 1 gram or more but less than 15 grams of a substance containing heroin, a Class 1 felony. Both counts were based on defendant's alleged actions on December 8, 2007. The heroin that was the basis for the charges was in a hotel room registered to defendant after the police stopped the vehicle in which he was a passenger in the hotel's parking lot. The driver of the vehicle was Fred Walker, who was defendant's codefendant.

¶ 5 At the April 29, 2008, court proceedings, the State requested the trial court arraign

defendant on the second count, dismiss the original count, and then proceed to trial on only the second count. Defendant noted his dissatisfaction with his trial counsel and wanted a continuance to hire new counsel. He also mentioned representing himself at trial. After addressing defendant's motions, the trial court arraigned defendant on the new count, and defendant indicated he wanted a preliminary hearing. Thereafter, defendant stated he did not want to be present at his trial. The court excused defendant and conducted the preliminary hearing. After finding probable cause, the court dismissed the original count and commenced defendant's jury trial on the second count. Defendant was absent from the courtroom for most of his trial.

¶ 6        At the conclusion of defendant's trial, a jury found defendant guilty as charged. Defense counsel filed a posttrial motion, and defendant filed two *pro se* motions. At a July 2008 joint hearing, the trial court denied defense counsel's posttrial motion, did not address defendant's *pro se* motions, and sentenced defendant to 24 years' imprisonment. No motion challenging defendant's sentence was filed.

¶ 7        Defendant appealed and argued (1) he was denied his right to counsel of choice, (2) the trial court erred by failing to examine his posttrial ineffective-assistance-of-counsel claims, and (3) he was denied effective assistance of counsel because his trial counsel failed to file a motion to suppress. *People v. Kelley*, No. 4-08-0570, slip order at 2 (Jan. 6, 2010) (unpublished order under Supreme Court Rule 23). The facts presented at defendant's trial relevant to the issues on his direct appeal are set forth in our order, and thus we do not repeat them here. See *Kelley*, slip order at 5-9. In our order, this court concluded the following: (1) the trial court did not abuse its discretion in denying defendant's motion to continue to substitute counsel, (2) the trial court's refusal to consider defendant's *pro se* ineffective-assistance-of-counsel claims was not erroneous, and (3) defendant's ineffective-assistance-of-counsel claim relief should be addressed under the Postconviction Act. *Kelley*, slip order at 16, 20, 26.

¶ 8        In August 2010, defendant filed his *pro se* postconviction petition, raising nine claims of constitutional error. Two of the claims were ineffective assistance of trial counsel based on counsel's failure to file a motion to suppress and a motion to reconsider defendant's sentence. In November 2010, the trial court moved defendant's petition to the second stage of the postconviction proceedings and appointed counsel for defendant. In March 2011, appointed counsel filed an amended postconviction petition, which basically listed defendant's arguments in clearer terms. Appointed counsel also filed a certificate under Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). That same month, appointed counsel supplemented the amended petition with a notarized affidavit of Walker.

¶ 9        In June 2011, the trial court set defendant's petition for an evidentiary hearing since the State had failed to file a responsive pleading. On July 8, 2011, the court held the evidentiary hearing. At the beginning of the hearing, defendant's counsel requested defendant's shackles be removed so he could more easily assist counsel. The court denied defendant's request. Defendant testified on his own behalf and presented the testimony of Walker, who testified the drugs found in the hotel room belonged to him and not defendant. He also asked the court to take judicial notice of the court file and transcripts in this case and the court file for Walker's case (People v. Walker, No. 07-CF-2152 (Cir. Ct. Champaign Co.)). When

defendant testified, defendant's counsel again requested the removal of his shackles, and the court again declined. Defendant testified he requested his trial counsel, Janie Miller-Jones, to file a motion to suppress the heroin found in the hotel room every time they talked, and she refused because she did not think defendant had a valid basis for such a motion. Defendant also testified he requested counsel to file a motion to reconsider his sentence. The State presented the testimony of Miller-Jones. Miller-Jones testified she did not file a motion to suppress because a valid basis for one did not exist. She also stated defendant did not ask her to file a motion to reconsider his sentence. At the conclusion of the hearing, the court took the matter under advisement.

¶ 10    In July 2011, the State filed a motion to reopen the evidence, which the trial court granted. On September 7, 2011, the court heard more evidence related to Walker's testimony. On September 27, 2011, the court filed a written memorandum denying defendant's postconviction petition. On September 30, 2011, defendant filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 606 (eff. Mar. 20, 2009). See Ill. S. Ct. R. 651(d) (eff. Dec. 1, 1984) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. Dec. 1, 1984).

¶ 11                                   II. ANALYSIS

¶ 12    Here, defendant challenges the trial court's denial of his postconviction petition after an evidentiary hearing. The Postconviction Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). In cases not involving the death penalty, the Postconviction Act sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007.

¶ 13    At the first stage, the trial court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2010). If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Defense counsel may amend the defendant's petition to ensure his or her contentions are adequately presented. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1008. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008.

¶ 14    At both the second and third stages of the postconviction proceedings, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. Additionally, it is at this stage where the court makes fact-finding and credibility determinations. *People v. Marshall*, 375 Ill. App. 3d 670, 674,

-4-

873 N.E.2d 978, 982 (2007). Thus, when the trial court denies a defendant's postconviction petition following an evidentiary hearing, we review for manifest error. *People v. Johnson*, 206 Ill. 2d 348, 357, 794 N.E.2d 294, 301 (2002). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *Johnson*, 206 Ill. 2d at 360, 794 N.E.2d at 303 (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997)). Additionally, we point out this court is not bound by the trial court's reasoning for its judgment and can affirm the trial court's judgment on any ground in the record regardless of whether the trial court relied on it. *People v. Durgan*, 281 Ill. App. 3d 863, 867, 667 N.E.2d 730, 733 (1996).

¶ 15                                   A. Shackling

¶ 16     Defendant asserts the trial court erred by refusing his requests to remove his handcuffs at the beginning of the evidentiary hearing and when he testified. Specifically, he asserts the trial court misapplied *People v. Boose*, 66 Ill. 2d 261, 362 N.E.2d 303 (1977), by relying on factors not supported by the record and factors that are irrelevant to a *Boose* analysis. The State disagrees and notes Illinois Supreme Court Rule 430 (eff. July 1, 2010), which addresses the use of restraints, is limited to trial proceedings in which a defendant's guilt or innocence is determined and a similar rule does not exist for postconviction proceedings. We first address the issue of *Boose*'s applicability to postconviction proceedings. Since that issue presents a question of law, our review is *de novo*. See *People v. Leach*, 2012 IL 111534, ¶ 64, 980 N.E.2d 570.

¶ 17     In *Boose*, 66 Ill. 2d at 265, 362 N.E.2d at 305, our supreme court recognized the shackling of an accused should be avoided if possible because "(1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process." The supreme court noted most courts had found an accused should never be in restraints in the jury's presence absent a showing of a manifest need for the restraints. *Boose*, 66 Ill. 2d at 265-66, 362 N.E.2d at 305; see also *Deck v. Missouri*, 544 U.S. 622, 626-27 (2005) (noting the law has long forbidden the routine use of visible shackles during the guilt phase except when special need is shown). Such a need exists if (1) the defendant may try to escape, (2) the defendant may pose a threat to the people in the courtroom, or (3) it is necessary to maintain order during the trial. *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305. The *Boose* court held the determination of whether restraints are necessary rests within the trial court's discretion and set forth a list of factors the trial court should consider when making its determination. *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06. It also required that, outside the jury's presence, the trial court give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled and then state for the record the court's reasons for its determination on the use of restraints. *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305. Moreover, the *Boose* court rejected the State's argument the standards addressing shackling of an accused during a trial to determine guilt or innocence should not be applied to a pretrial competency hearing. *Boose*, 66 Ill. 2d at 268, 362 N.E.2d at 306.

¶ 18     Over time, our supreme court has expanded the *Boose* decision to other proceedings and types of restraints. In *In re Staley*, 67 Ill. 2d 33, 38, 364 N.E.2d 72, 73-74 (1977), the

supreme court held *Boose* also applied to bench trials. The court explained the presumption of innocence is central to the criminal justice system and the use of shackles without clear cause undermines the presumption's value and protection by requiring an accused to stand in a courtroom in restraints while he is being judged. *Staley*, 67 Ill. 2d at 37, 364 N.E.2d at 73. The *Staley* court also mentioned the use of restraints hindered the accused's ability to cooperate with his attorney and assist in his defense. *Staley*, 67 Ill. 2d at 37, 364 N.E.2d at 73. Applying its reasoning in *Staley*, our supreme court later found the *Boose* holding applied to an electronic stun belt worn under the defendant's clothing at trial. *People v. Allen*, 222 Ill. 2d 340, 347, 856 N.E.2d 349, 353 (2006).

¶ 19 In 2010, the supreme court enacted Rule 430, which addresses the trial of an incarcerated defendant. In that rule, the supreme court limited the determination required by *Boose* "to trial proceedings in which the defendant's innocence or guilt is to be determined, and does not apply to bond hearings or other instances where the defendant may be required to appear before the court prior to a trial being commenced." Ill. S. Ct. R. 430 (eff. July 1, 2010). Thus, while the supreme court stated in its comments to Rule 430 that the rule codified *Boose* and *Allen* (Ill. S. Ct. R. 430, Commentary (adopted Mar. 22, 2010)), a conflict exists with the *Boose* finding its determination applied to pretrial competency hearings and the language of the rule.

¶ 20 The United States Supreme Court has also addressed the issue. Defendant cites language from *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986), and *Illinois v. Allen*, 397 U.S. 337, 344 (1970), both of which discussed the strong disapproval of shackling and restraints during a jury trial. Further, in *Deck*, 544 U.S. at 633, the Supreme Court held courts cannot routinely place defendants in physical restraints visible to the jury during the penalty phase of a capital proceeding. The Court noted the three fundamental legal principles which militate against the routine use of visible shackles during the guilt phase of a criminal trial apply with equal force to the penalty phase of a capital proceeding. *Deck*, 544 U.S. at 630-32. As to the first principle, the *Deck* Court recognized the jury was no longer deciding between guilt and innocence in the penalty phase of a capital trial but found deciding between life and death was just as important as guilt and innocence. *Deck*, 544 U.S. at 632. Regarding the second principle, the *Deck* Court explained the use of physical restraints interferes with the defendant's ability to communicate with counsel and participate in his own defense. *Deck*, 544 U.S. at 631. Further, the restraints generally tend to prejudicially affect the defendant's constitutional rights by imposing pain, confusion, and embarrassment. *Deck*, 544 U.S. at 631. With regard to the final principle, the Supreme Court noted the shackling of defendants in the jury's presence undermines the courtroom's formal dignity, which includes the respectful treatment of defendants and reflects the importance of the matter at issue, *i.e.*, the "deprivation of an individual's liberty through criminal punishment." *Deck*, 544 U.S. at 631. Moreover, the courtroom's dignity also inspires confidence in the judicial system and affects the behavior of the "public whose demands for justice our courts seek to serve." *Deck*, 544 U.S. at 631.

¶ 21 Additionally, defendant notes the Third District's decision in *People v. Rippatoe*, 408 Ill. App. 3d 1061, 1066-67, 945 N.E.2d 132, 137 (2011), which held a court errs when it permits a defendant to be shackled at any point in a criminal proceeding unless the court has

conducted a hearing in accordance with *Boose*. In support of that holding, the Third District cited *Boose*, 66 Ill. 2d at 265-66, 362 N.E.2d at 305, and *Allen*, 222 Ill. 2d at 367, 856 N.E.2d at 364, both of which addressed the use of restraints in the presence of a jury but did not discuss the use of restraints at all criminal proceedings. See *Rippatoe*, 408 Ill. App. 3d at 1067, 945 N.E.2d at 137. Since the defendant in *Rippatoe* failed to preserve the restraint issue for appellate review, the Third District went on to address plain error. *Rippatoe*, 408 Ill. App. 3d at 1066-67, 945 N.E.2d at 137-38. It found plain error, noting the integrity of the judicial process was greatly demeaned when defendant appeared *pro se*, took an oath, testified, questioned witnesses, and presented his arguments to the court while shackled without considering the need for the shackles. *Rippatoe*, 408 Ill. App. 3d at 1068, 945 N.E.2d at 138. It also found defendant's ability to act on his own behalf was likely severely diminished. *Rippatoe*, 408 Ill. App. 3d at 1068, 945 N.E.2d at 138.

¶ 22        In *In re Mark P.*, 402 Ill. App. 3d 173, 177, 932 N.E.2d 481, 485 (2010), also cited by defendant, the Second District held the trial court should have exercised its discretion in determining whether the defendant should have been restrained at an involuntary commitment hearing and had some factual basis for the restraints other than they would have no effect on the court's judgment.

¶ 23        After reviewing the relevant case law on shackling, we turn to the nature of postconviction proceedings. The Postconviction Act provides a defendant with a collateral mechanism to challenge his or her conviction or sentence for violations of federal or state constitutional rights. *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518 (2004). "In a postconviction proceeding, the circuit court does not redetermine a defendant's guilt or innocence, but instead examines constitutional issues which escaped earlier review." *Greer*, 212 Ill. 2d at 203, 817 N.E.2d at 518. Our supreme court has emphasized postconviction procedures are a review of a prior proceeding that resulted in a defendant's conviction regardless of whether evidence is introduced concerning matters outside the record. *Greer*, 212 Ill. 2d at 203, 817 N.E.2d at 518.

¶ 24        Moreover, the right to counsel in postconviction proceedings is a statutory right rather than constitutional, and the Postconviction Act does not provide for appointment of counsel unless the defendant's petition survives the first stage of postconviction proceedings. *Greer*, 212 Ill. 2d at 203, 817 N.E.2d at 518-19. If counsel is appointed, a defendant is only entitled to a reasonable level of assistance. *Greer*, 212 Ill. 2d at 204, 817 N.E.2d at 519. Moreover, counsel may move to withdraw from representation if the defendant's issues are meritless. *Greer*, 212 Ill. 2d at 211, 817 N.E.2d at 523. Accordingly, an evidentiary hearing in a postconviction proceedings does not involve a jury, the presumption of innocence, sentencing, or the constitutional right to counsel.

¶ 25        With postconviction proceedings, the defendants are convicted criminals seeking review of possible constitutional errors in their trials and/or sentences. The constitutional concerns at issue in the trial and sentencing phases of criminal proceedings are not present in postconviction proceedings. Further, the dignity of the courtroom is not demeaned by a convicted criminal's appearance in shackles when he or she seeks review of his or her trial and/or sentence because the defendant's guilt and sentence have already been determined. We strongly disagree with defendant that restraints during postconviction proceedings make

-7-

a mockery of postconviction proceedings, which are review proceedings after a conviction. Moreover, for the same reason, we disagree with *Rippatoe* that the dignity of the courtroom is demeaned by a *pro se* defendant's representation of himself at a proceeding after his trial, especially since the defendant there did not even express an issue with the restraints at the hearing. Additionally, our supreme court has specifically limited the *Boose* determination in Rule 430 to proceedings involving the determination of guilt or innocence and chose not to make a similar rule for postconviction proceedings. Accordingly, we find the presumption that shackling is improper until manifest need is shown and the required determination of manifest need established by *Boose* and its prodigy does not apply to postconviction proceedings.

¶ 26       Turning to the facts of this case, defendant's counsel twice requested the unshackling of defendant. While *Boose*'s presumption against shackling does not apply to postconviction proceedings, the matter of shackling still remains within the trial court's discretion when a defendant has raised the issue with the trial court. See *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305; *Mark P.*, 402 Ill. App. 3d at 177, 932 N.E.2d at 485. Thus, we will not disturb the trial court's decision to not remove defendant's shackles at the evidentiary hearing absent an abuse of discretion. See *People v. Starks*, 2012 IL App (2d) 110273, ¶ 20, 966 N.E.2d 347.

¶ 27       At the beginning of the evidentiary hearing, defense counsel requested defendant's shackles be removed to allow defendant to more easily (1) take notes, (2) pass notes to counsel, and (3) participate throughout the course of the hearing. When defendant was called to testify, counsel requested the shackles be removed while defendant testified. When the shackling issue was first raised, the State objected arguing it was not in the interest of courtroom security to have defendant unshackled based on defendant's behavior at trial, his refusal to attend trial, and his attempts to put his head through a wall.

¶ 28       After both of defendant's requests to be unshackled, the trial court expressly addressed the relevant considerations, applicable case law, and Rule 430 in denying defendant's requests. The court noted that, while restrained, defendant could walk freely and could raise his hand sufficiently to take the oath. It found defendant was not encumbered in any way by the restraints. The court also stated the restraints would not affect its decision because it routinely saw people in shackles and often did not even notice them. Moreover, the court voiced security concerns because the room had four exits and only one guard. Two of the exits led to unsecured staff areas and one to the public area of the courthouse. Other people were also present in the courtroom. Additionally, the court explained defendant posed a safety risk to the people in the courtroom and a risk of disruption to the order of the courtroom. Specifically, it noted defendant had banged his head against a wall in the past and had a history of being disruptive in the courtroom and difficult in the jail.

¶ 29       Defendant contends the record does not indicate defendant was disruptive at his trial. However, the record discloses that, on the day of trial before jury selection, defendant first objected to appointed counsel representing him and then stated he did not want to be in the courtroom for trial. The trial court explained defendant's rights and tried to talk to defendant about his decisions. When the court stated defendant had the right to leave, the court documented that defendant stood up, moved toward the holding cell, and then the court heard defendant "physically lashing out as he's being taken into the holding cell and striking

something." The court also noted it appeared defendant was becoming more and more disruptive in the courtroom before he left. It explained defendant appeared to be making dramatic gestures, putting his head on the table, appearing to cry, and becoming more and more agitated. Thus, we disagree the record does not show defendant's prior disruption in the courtroom.

¶ 30     The trial court clearly considered all of the relevant circumstances at the evidentiary hearing when it denied defendant's request to remove its shackles, and thus we find the trial court did not abuse its discretion.

¶ 31                           B. Ineffective Assistance of Trial Counsel

¶ 32     Defendant also argues the trial court erred by finding his claims trial counsel was ineffective for failing to file (1) a motion to suppress and (2) and a motion to reconsider defendant's sentence were barred by the doctrines of *res judicata* and forfeiture, respectively. The State concedes the court's ruling on the motion to suppress was erroneous and addresses the motion-to-reconsider claim on the merits. As to both issues, the State contends we may affirm their denial because defendant failed to make a substantial showing of a constitutional error at the evidentiary hearing.

¶ 33     This court analyzes ineffective-assistance-of-counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 34     To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Strickland*, 466 U.S. at 687. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Stated differently, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted that, when a case is more easily decided on the ground of lack of sufficient prejudice, rather than that counsel's representation was constitutionally deficient, the court should do so. *Strickland*, 466 U.S. at 697.

¶ 35                                     1. *Motion To Suppress*

¶ 36     Defendant contends this court cannot affirm the trial court's denial of his claim of ineffective assistance of trial counsel for counsel's failure to file a motion to suppress based on the State's argument. We disagree.

¶ 37    First, we note defendant's petition moved to the third stage for an evidentiary hearing based on the State's failure to file a responsive pleading. Thus, the trial court never analyzed whether defendant's amended postconviction petition made a substantial showing of a constitutional error. Regardless, on appeal, the State is asserting defendant failed to make a substantial showing of constitutional error at the third stage of the postconviction proceedings, not the second. The State's argument is based on the evidence at the hearing and on the arguments in defendant's postconviction petitions.

¶ 38    As we stated on direct appeal, counsel's determination of whether to file a motion to suppress is entitled to great deference because it is a matter of trial strategy. *Kelly*, slip order at 22 (citing *People v. Bew*, 228 Ill. 2d 122, 128, 886 N.E.2d 1002, 1006 (2008)). "To successfully establish ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence, the defendant must demonstrate a reasonable probability exists that both (1) the trial court would have granted the motion and (2) the trial's outcome would have been different had the court suppressed the evidence." *Kelly*, slip order at 22 (citing *People v. Givens*, 384 Ill. App. 3d 101, 108, 892 N.E.2d 1098, 1106 (2008)).

¶ 39    In his *pro se* postconviction petition, defendant alleged trial counsel was ineffective for failing to move to suppress the evidence and included the portion of his appellant brief on direct appeal that raised the issue. In his amended postconviction petition, defendant asserted counsel should have filed a motion to suppress the drugs found in the hotel room where the search of the hotel room was improper because (1) the police officers lacked a valid reason for searching the hotel room and (2) the search was the result of an illegal search warrant.

¶ 40    At the evidentiary hearing, defendant testified he first mentioned the possibility of a motion to suppress after trial counsel explained the police had the right to call the canine unit. Trial counsel responded she did not think any grounds supported filing a motion to suppress. Thereafter, defendant mentioned the possibility of a motion to suppress every time he talked with counsel and noted he told counsel he did not think the police had probable cause. Defendant did not present the testimony of Darion Banigo, who was present in the hotel room when the police sought to search it, or any of the police officers involved in the search of defendant's hotel room. The State presented the testimony of defendant's trial counsel, Miller-Jones. She testified defendant wanted her to file a motion to suppress, and she informed him no meritorious grounds existed for filing one. Miller-Jones testified that, based upon her experience as an attorney, a valid reason for filing a motion to suppress did not exist for the circumstances and facts of defendant's case. Thus, this court essentially has the same record before it as we did on direct appeal.

¶ 41    On direct appeal, we set forth a thorough explanation of the case law on this issue, noted the witnesses whose testimony would be relevant at an evidentiary hearing, and explained the need for a factual hearing on this specific issue. *Kelly*, slip order at 24-26. At the evidentiary hearing, defendant declined to present any evidence on the issue beyond his testimony that he asked counsel to file a motion to suppress. No credibility determination exists on the legality of the search of the hotel room because defendant presented no live testimony on it at the evidentiary hearing. Moreover, postconviction counsel did not address any of the relevant case law noted in our order on direct appeal. Accordingly, defendant, who had the burden of proof, failed to make a substantial showing of an ineffective-assistance-of-

counsel claim based on counsel's failure to file a motion to suppress. Thus, we find the trial court's denial of this issue was proper.

¶ 42                              2. *Motion To Reconsider*

¶ 43    The State argues defendant has forfeited his argument challenging the trial court's denial of his ineffective-assistance-of-counsel claim based on counsel's failure to file a motion to reconsider his sentence by failing to cite legal authority in support of the claim. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006). Defendant did cite several cases at the beginning of his argument on this issue, and thus we find defendant has not forfeited the issue.

¶ 44    In his *pro se* postconviction petition, defendant argued trial counsel should have filed a motion to reconsider to argue his 24-year sentence was greater than the statutory maximum for a Class 1 felony and excessive. When a defendant has raised an ineffective-assistance-of-counsel claim based on counsel's failure to file a motion to reconsider, this court has first addressed the prejudice prong by determining if the alleged errors that should have been raised in the petition have any merit. See *People v. Price*, 2011 IL App (4th) 100311, ¶¶ 36-38, 958 N.E.2d 341.

¶ 45    Defendant was found guilty of unlawful possession with the intent to deliver a controlled substance for possessing 1 gram or more but less than 15 grams of a substance containing heroin, a Class 1 felony. 720 ILCS 570/401(c)(1) (West Supp. 2007). The sentencing range for a Class 1 felony is 4 to 15 years. 730 ILCS 5/5-8-1(a)(4) (West 2006). At sentencing, the trial court found defendant was subject to section 408(a) of the Illinois Controlled Substances Act (720 ILCS 570/408(a) (West 2006)), which provides "[a]ny person convicted of a second or subsequent offense under this Act may be sentenced to imprisonment for a term up to twice the maximum term otherwise authorized, fined an amount up to twice that otherwise authorized, or both." Defendant's presentence investigation report shows defendant had four prior convictions for unlawful possession of a controlled substance and several other drug offenses. Thus, the court properly found section 408(a) applied to defendant, which gave defendant a sentencing range of 4 to 30 years' imprisonment. Accordingly, defendant's 24-year sentence was within the statutory range.

¶ 46    As to defendant's excessive-sentence claim, this court has explained appellate review of a defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly

-11-

disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004)).

¶ 47     As stated, defendant's sentence falls within the applicable sentencing range. Defendant had a lengthy criminal history that included eight prior offenses related to illegal substances. He had been sentenced to the Department of Corrections on five prior occasions and had never successfully completed a community-based sentence. The record shows the court considered all of the relevant circumstances. Accordingly, the trial court did not abuse its discretion in sentencing defendant to 24 years' imprisonment.

¶ 48     Since defendant failed to make a substantial showing of prejudice as a result of his counsel's failure to file a motion to reconsider defendant's sentence, we find defendant was not denied effective assistance of counsel. Thus, we conclude the trial court properly denied this postconviction claim.

¶ 49                            III. CONCLUSION

¶ 50     For the reasons stated, we affirm the Champaign County circuit court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 51     Affirmed.